E-FILED
Wednesday, 10 November, 2010 04:40:25 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CHAD FITZPATRICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08-3218 |
| | ) | |
| JAMES REINHART, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

This matter comes before the Court on James Reinhart and Michael Randle's Motion for Summary Judgment (d/e 42).[1] The Plaintiffs are nine journeymen electricians who unsuccessfully sought a single journeyman electrician position at the Lincoln Correctional Center in Lincoln, Illinois. They claim that Defendant James Reinhart discriminated against them because of their political affiliation by hiring an unqualified person for the position, Dennis Wilson, based on political considerations. Defendant Randle is being sued in his official capacity as Director of the Illinois

---

[1]Defendant Reinhart's last name is spelled "Rhinehart" in the caption of the Complaint (d/e 1) and elsewhere in the pleadings. Defendant Reinhart, however, spelled his name "Reinhart" in his deposition. Response to Motion for Summary Judgment (d/e 47), attached Deposition of James Reinhart, at 5. The Court, therefore, uses the "Reinhart" spelling for Defendant Reinhart.

1

Department of Corrections (Department) only to seek prospective injunctive relief.² The Defendants seek summary judgment on the Plaintiffs' claims. For the reasons set forth below, the Motion is allowed. The Plaintiffs fail to present evidence that Defendant Reinhart hired Wilson based on political considerations.

STATEMENT OF FACTS

The political affiliation of an applicant for state employment is not an appropriate consideration for state jobs except under certain circumstances when political affiliation would be an appropriate consideration, such as when the employee would have access to confidential information or policymaking authority. See Rutan v. Republican Party of Illinois, 497 U.S. 62 (1990); Hall v. Babb, 389 F.3d 758, 762 (7th Cir. 2004). After the Rutan decision, the State of Illinois divided state jobs into "Rutan-covered" and "Rutan-exempt" positions. Rutan-covered positions were state jobs for which the state determined that political affiliation was not an appropriate consideration for any employment decision. See Whitlow v. Martin, __ F.Supp.2d.__, 2010 WL 2521443 at *2 (C.D. Ill., June 15, 2010).

---

²The Plaintiffs voluntarily dismissed their claims against Carolyn Trancoso. She is no longer a party. Text Order entered October 6, 2010.

2

Democrat Rod Blagojevich became Governor of Illinois in January 2003. Shortly after taking office in 2003, Governor Blagojevich instituted a new hiring procedure for all parts of Illinois government that were under his direct jurisdiction. The Department was covered by this new procedure. Under this procedure, all requests for new hires had to be approved by the Office of Management and Budget (OMB) within the Governor's Office on a form known as an Electronic Personnel Action Request (ePAR). After the OMB in the Governor's Office approved the ePAR, the relevant agency or department posted the opening and went through the normal hiring process. After completing the hiring process, the relevant agency or department sent the Governor's Office a recommendation to hire the successful candidate on the ePAR. The OMB in the Governor's Office then had to approve the selection before the candidate could be hired. See Response to Motion for Summary Judgment (d/e 47) (Response), attached Deposition of Laura Norton, at 26-27, and Exhibit 2, Schematic Diagram ePAR System.

Political supporters of Governor Blagojevich recommended individuals to the Governor for state jobs, both Rutan-covered and Rutan-exempt. From 2003 until December 2004, Laura Norton kept track of such recommendations within the Governor's Office. She would tell the

3

recommended individuals of openings and give them instructions on how to apply for the openings through the regular hiring process. She would also notify the relevant agency or department if such a recommended individual had applied for an opening. Norton testified in her deposition that early in the Blagojevich administration, the Governor's Office did not give final approval to fill the position if the relevant agency or department did not select the recommended individual for the opening, unless the hire was crucial. Norton Deposition, at 27.

In December 2004, Norton became the Director of Personnel for the Department. Norton testified that when she was working at the Department, the Governor's Office stopped micro-managing the hiring process. She stated that the ePAR form was changed so that the name of the successful candidate did not appear on the form when it was sent back to the Governor's Office for final approval. Thus, the Governor's Office was not informed of the identity of the successful candidates for Rutan-covered positions. She stated that positions were filled based on merit. Norton left the Department for a job in the private industry in December 2006. Norton Deposition, at 28.

In December 2004, Defendant Reinhart took Norton's position in the

4

Governor's Office at the same time that Norton went to the Department. Reinhart performed the same function as Norton, matching recommended individuals with openings and assisting them in filing applications for employment. In December 2006, Reinhart became Chief of Staff for the Department. Response, attached Deposition of James Reinhart, at 41; Norton Deposition, at 15, 17.[3]

On April 3, 2007, the Governor's Office approved the Department's request to fill a journeyman electrician position at the Lincoln Correctional Center (Position). Response, Exhibit 9, PAR 026312 for Department of Corrections. The Position was then posted. The notice for the Position stated that April 30, 2007, was the latest day to apply. Response, Exhibit 1, Job Posting. The Position required the person to perform journeyman electrical work. The notice stated that no formal education was required, but the Position "requires experience necessary to qualify as a journeyman electrician." Id.

The Job Posting did not define the term "journeyman electrician." The

---

[3]Reinhart stated in his deposition that he started at the Department in December 2005 or 2006. Reinhart Deposition, at 41. Norton stated that Reinhart was not yet at the Department when she left in 2006. Norton Deposition, at 17. The Court concludes for purposes of this Opinion that Reinhart started at the Department in 2006.

evidence indicates that the term "journeyman electrician" has at least two definitions. John Johnson, the Assistant Business Manager for the International Brotherhood of Electrical Workers (IBEW) Local 51, testified that a journeyman electrician in Local 51 was an electrician with four years experience. <u>Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment (d/e 50) (Reply)</u>, Exhibit 1, <u>Deposition of John Johnson</u>, at 17-20. Local 51 covered electricians that worked at the Clinton, Illinois, nuclear power plant. <u>Id.</u> at 15. Johnson also testified that some IBEW locals defined "journeyman electrician" to mean an individual who completed a certified apprenticeship program. Johnson testified that IBEW Local 193 in Springfield, Illinois, used this definition for journeyman electrician. <u>Id.</u> at 20-22.

Wilson applied for the Position. Wilson had worked as an electrician in the Navy and at the Clinton nuclear power plant. <u>Reply</u>, attached <u>Deposition of Dennis Wilson, at 11-12 and Deposition Exhibit, Application for Position</u>, at Bates Stamp pp. 00008-00011. Wilson held the position of general repairman electrician at the Clinton plant. Wilson was an IBEW Local 51 member during his tenure at the Clinton plant. The general repairman electrician position required five years experience and was a

6

promotion above the journeyman electrician level at the Clinton plant, according to IBEW Local 51. <u>Johnson Deposition</u>, at 18. Wilson, however, did not complete a certified apprenticeship program, and so, would not be considered a journeyman electrician by IBEW Local 193.

Wilson was not politically active. He voted, but did not contribute to any political campaigns, attend any political functions, or work for any political candidates. <u>Memorandum of Law in Support of Motion for Summary Judgment (d/e 43) (Defendants' Memorandum)</u>, Exhibit 33, <u>Affidavit of Dennis Wilson</u>, ¶ 8, and Exhibit 34, <u>Deposition of Dennis Wilson</u>, at 54. Wilson also testified that he did not ask anyone for assistance in getting the Position and did not list any references prior to being selected. <u>Wilson Affidavit</u>, ¶¶ 2-3.

Leslie Krebs, Human Resources Representative at the Department, was in charge of the hiring process for the Department. <u>Response</u>, attached <u>Deposition of Leslie Krebs</u>, at 23-24. Krebs reviewed the applications to make a list of qualified applicants for the interview process. Upon reviewing Wilson's application, Krebs asked Marilyn Lowery to confirm that Wilson was a journeyman electrician. <u>Krebs Deposition</u>, at 61. Lowery was the Human Resources Representative in the Lincoln Correctional Center

Personnel Department.  Response, attached Deposition of Marilyn Lowery Deposition, at 15-16.  Lowery contacted Wilson to ask for verification.  Wilson sent Lowery a copy of his IBEW Local 51 Union card that he acquired when he worked at the Clinton nuclear power plant.  The card stated that Wilson was a general repairman electrician.  After receiving the copy of the card, Lowery called Wilson because the card did not say journeyman electrician.  After Lowery called him, Wilson spoke to Assistant Business Manager Johnson at IBEW Local 51 to confirm that the general repairman position was a journeyman position.  Johnson confirmed that the general repairman position was a journeyman position.  Wilson Deposition, at 19-20.  Wilson called Lowery and told her that the general repairman electrician was a journeyman position.  Id.

Lowery gave Krebs the information that she received from Wilson regarding his qualifications.  Krebs believed if an electrician was a member of the IBEW, then he was a journeyman electrician and qualified for the Position.  Krebs Deposition, at 61-63.  Krebs testified that she contacted a person at Local 51 and confirmed that Wilson had been a member of the IBEW and could become a member again.  She was told that all he had to do was pay his dues and he would be reinstated.  Krebs Deposition, at 66-

67. After receiving this information, Krebs put Wilson on the list of qualified candidates to be interviewed. The Plaintiffs submitted a list of candidates which contained a handwritten note indicating that Krebs confirmed with Local 51 that Wilson could rejoin the IBEW if he was selected for the job. <u>Response</u>, Exhibit 10, <u>Candidate List</u>, at 2.

Krebs selected Steve Spaide and Michael Jerrod Wainscott to conduct the interviews. The Department had a policy that the persons conducting employment interviews should not work at the hiring facility. <u>Defendants' Memorandum</u>, Exhibit 35, <u>Deposition of Rebecca Shuster</u>, at 71. Spaide and Wainscott both worked at the Decatur Correctional Center. Spaide was an Administrative Assistant II. Spaide handled union grievances, background checks, and was the volunteer coordinator. <u>Response</u>, attached <u>Deposition of Steven Spaide</u>, at 17.[4] Wainscott was Clinical Services Supervisor. He supervised four counselors who taught inmates. <u>Response</u>, attached <u>Deposition of Michael Jerrod Wainscott</u>, at 53-54. Wainscott had previously worked in Governor Blagojevich's Office when Laura Norton was there. He did the same type of work as Norton, referring candidates to

---

[4]Spaide's first name is spelled "Steven" in his deposition transcript. His first name is spelled "Stephen" in his Affidavit. <u>Defendants' Memorandum</u>, Exhibit 28, <u>Affidavit of Stephen Spaide</u>.

open positions in state government.  <u>Norton Deposition</u>, at 61; <u>Wainscott Deposition</u>, at 27-34.

Krebs prepared the questions for the interview.  She did not prepare sample answers to the questions.  She stated that the questions used in the interview did not have specific right or wrong answers.  <u>Krebs Deposition</u>, at 32.  Spaide had received a telephone call from someone in personnel in Springfield notifying him that one of the candidates was not a member of the local chapter of the IBEW.  The caller stated, however, that the person met all the requirements for the Position.  The caller did not identify the candidate who was not a member of the IBEW Local.  Spaide could not recall the name of the caller.  <u>Spaide Deposition</u>, at 19, 54.  Spaide and Wainscott did not otherwise discuss the candidates with anyone else prior to the interview process.  <u>Defendants' Memorandum</u>, Exhibit 28, <u>Affidavit of Stephen Spaide</u>, ¶ 9, and Exhibit 29, <u>Affidavit of Michael Jerrod Wainscott</u> ¶ 9.

Spaide and Wainscott conducted the interviews on June 28, 2007.  Spaide and Wainscott were not aware of the political affiliation of any candidate.  <u>Spaide Affidavit</u> ¶ 5; <u>Wainscott Affidavit</u> ¶ 5. After completing the interviews, Spaide and Wainscott gave Krebs the information on the

candidate evaluation forms. Krebs ranked the candidates and confirmed that Wilson was selected for the Position by the interviewers. Krebs Deposition, at 92.

On July 6, 2007, Krebs sent an email to the Department's Equal Employment Opportunity (EEO) Officer Leslie McCarty asking her to process the attached EEO Hiring Monitor. McCarty signed the form indicating that she concurred with the hire. The EEO Hiring Monitor had a preprinted date on it of June 28, 2007. Response, Plaintiff's Exhibit 7, July 6, 2007, email and Hiring Monitor.

Krebs submitted the ePAR to the Governor's Office on July 10, 2007. The ePAR forms submitted to the Court did not contain Wilson's name. Response, Exhibit 8 and 9, ePAR Forms. The Governor's Office approved the hire on August 2, 2007. Id. On August 10, 2007, Wainscott sent Krebs an email asking if Krebs wanted the paperwork for the Position. On August 13, 2007, Krebs sent an email to Wainscott asking him for the signed candidate evaluations forms for the Position.

The Plaintiffs were the unsuccessful candidates for the Position. They were all journeymen electricians and members of IBEW Local 193. A representative of the IBEW Local 193 complained to Reinhart about the

selection of Wilson. Reinhart referred the matter to the Department's General Counsel Edward Huntley. Huntley reviewed the matter to determine whether the Department followed the proper procedures. Response, attached Deposition of Edward Huntley, at 10, 13. Huntley determined that the proper procedures were followed. Reinhart Deposition, at 59. Wilson started in the Position on March 3, 2008. Response, attached Deposition of Dennis Wilson, at 40.

## ANALYSIS

The Defendants now move for summary judgment on Plaintiffs' claims. At summary judgment, the Defendants must present evidence that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The Court must consider the evidence presented in the light most favorable to the Plaintiffs. Any doubt as to the existence of a genuine issue for trial must be resolved against the Defendants. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once the Defendants have met their burden, the Plaintiffs must present evidence to show that issues of fact remain with respect to an issue essential to their case, and on which they will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Matsushita Elec. Indus. Co., Ltd. v. Zenith

Radio Corp., 475 U.S. 574, 586 (1986). In this case, the Defendants are entitled to summary judgment.

In order to make a prima facie case, the Plaintiffs must present evidence that they engaged in constitutionally protected activity, and that the Defendants discriminated against them because they engaged in the protected activity. Fairley v. Andrews, 578 F.3d 518, 525-26 (7th Cir. 2009); Hall, 389 F.3d at 762.[5] In the context of this case, the Plaintiffs must present evidence that they and Wilson engaged in protected political activity by affiliating or not affiliating with a particular politician or party, and that their political activities caused the Defendants to hire Wilson for the position. Hall, 389 F.3d at 762. If the Plaintiffs can establish these two

---

[5]The Supreme Court previously stated that a plaintiff in a § 1983 case must show that the protected activity was a substantial or motivating factor for the defendant's conduct. Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). Last year, the Supreme Court stated that a plaintiff bringing a claim under the Age Discrimination in Employment Act (ADEA) must present evidence that age was the reason for the wrongful conduct, not just a motivating factor. Gross v. FBL Financial Services, Inc., __ U.S.__, 129 S.Ct. 2343, 2351 (2009). The Supreme Court based this decision on the language of the ADEA. Id. The Gross majority stated that the "motivating factor" standard established in Mt. Healthy for § 1983 cases had no bearing on ADEA claims because the language of the statute controlled. Id., at 2352, n.6. The Seventh Circuit Court of Appeals, however, has now determined that the Gross decision changed the plaintiff's burden of proof on causation in § 1983 cases from the standard announced in Mt. Healthy to the standard announced in Gross. Waters v. City of Chicago, 580 F.3d 575, 584 (7th Cir. 2009); Fairley, 578 F.3d at 525-26; but see Smith v. Xerox Corp., 602 F.3d 320, 328-29 (5th Cir. 2010) (declining to follow the decision in Fairley). This Court must follow the Seventh Circuit's interpretation of Gross.

13

elements, the Defendants must present evidence of a legitimate, non-political reason for the employment decision. Id.

If Defendants present such evidence, the Plaintiffs must present evidence that the stated reason is a pretext, that is a lie, and that political affiliation was the reason for the action. A plaintiff may meet this ultimate burden by presenting evidence of a prima facie case plus evidence of pretext. Massey v. Johnson, 457 F.3d 711, 717 (7th Cir. 2006).

The Plaintiffs fail to present evidence of a prima facie case. The Plaintiffs present no evidence that Wilson affiliated himself with any particular politician or political party. Wilson stated that he voted, but did not contribute to political campaigns, attend political rallies or work for political candidates. Wilson did not state whether he voted in primaries. Thus, the evidence does not indicate whether he was a Democrat, Republican, or independent. The Plaintiffs present no evidence to contradict this testimony. The Index of the Exhibits to the Plaintiffs' Response lists an Exhibit 13 identified as Wilson's voting records, but no such exhibit was submitted to the Court. Response, attached Exhibit List,

at 2.[6] Thus, the Plaintiffs have failed to present evidence that Wilson affiliated himself with a particular political party or politician.

The Plaintiffs further have failed to present evidence that the political affiliation of Wilson or any of the Plaintiffs caused the hiring decision. The uncontroverted evidence indicates that Krebs put Wilson on the list of qualified candidates because she believed Wilson was qualified for the Position, not because of his political affiliation. Wilson represented that he had the necessary qualifications to be a journeyman electrician because he had been a repairman electrician, which was a promotion above journeyman electrician according to IBEW Local 51. Wilson confirmed with Johnson from Local 51 that he was qualified to be a journeyman electrician, and Wilson conveyed this information to Lowery. Krebs testified that she believed that an electrician had to be a journeyman electrician to be a member of the IBEW. She confirmed that Wilson could return to the IBEW as long as he paid his dues. Thus, Krebs believed Wilson was qualified.[7]

---

[6]The Exhibit List is attached to the Response immediately after the deposition excerpts and before the documentary exhibits.

[7]The Plaintiffs repeatedly assert that Wilson was not qualified for the Position. The evidence does not support this conclusion; rather, the evidence supports the conclusion that the requirements for the Position were unclear. Locals 51 and 193 of the

15

The uncontroverted evidence also shows that Spaide and Wainscott did not know the political affiliation of any candidate. Spaide received a call alerting him to an issue about whether one of the candidates was a union member, but no evidence shows that anyone contacted him about any candidate's political affiliation. The Plaintiffs cannot make out a prima facie case if they cannot present evidence that the persons making the hiring recommendation knew the political affiliation of the candidates. Hall, 389 F.3d at 763; see Zerante v. DeLuca, 555 F.3d 582, 585 (7th Cir. 2009).

The Plaintiffs complain that Spaide gave Wilson a perfect score. See Response, attached Exhibit 6, Score Sheet for Dennis Wilson. That fact only showed that Spaide may have wanted to recommend Wilson for the Position after the interviews; the perfect score does not show anything about political affiliation.

The Plaintiffs also complain that the questions did not have prescribed answers.[8] The fact that Krebs wrote open-ended questions that did not have prescribed answers may or may not show poor hiring procedures, but the use

---

same IBEW Union used two different definitions for the term "journeyman electrician." Wilson met the Local 51 definition of journeyman, but not the Local 193 definition.

[8]Neither party has submitted the questions to the Court. The questions may not have been retained by the Department.

of such questions does not show political bias.

The Plaintiffs complain that there were certain other improprieties in the hiring procedures. They complain that Krebs sent EEO Officer Leslie McCarty a Hiring Monitor form on July 6, 2007, with the date of June 28, 2007, pre-printed on the form. They complain that Spaide and Wainscott did not send Krebs the signed evaluation forms until after the hire was approved by the Governor. They argue that when Krebs sent the ePAR back to the Governor's Office for final approval, the Governor's Office knew that Wilson was the individual selected for the Position because Wilson's name was on the rating sheet used by Spaide and Wainscott. The pre-printed date on the Hiring Monitor form and the failure of Spaide and Wainscott to send a signed version of the form to Krebs in a timely manner may show sloppy paperwork, but the evidence does not show a causal connection between the political affiliation and the hiring decision. The fact that Wilson's name is on the score sheet does not prove anything because the Plaintiffs cite no evidence that the sheet was sent to the Governor's Office before the hire was approved on August 2, 2007. The evidence indicates that Krebs sent the ePAR back to the Governor's Office. There is no evidence that she sent score sheets. The Plaintiffs, therefore, failed to

present evidence of Wilson's political affiliation and failed to present evidence that political affiliation caused the Defendants to hire Wilson.

Finally, the Plaintiffs present no evidence that Defendant Reinhart did anything personally to make himself liable. The Plaintiffs are suing Reinhart personally. They, therefore, must present evidence that he was personally involved in the illegal activity. Ashcroft v. Iqbal, __U.S.__, 129 S.Ct. 1937, 1948-49 (2009). The evidence indicates that Reinhart did not know anything about the hiring process for the Position until the representative of IBEW Local 193 called to complain. That occurred after Wilson was selected. The Plaintiffs have no evidence that Reinhart personally participated in selecting Wilson for the Position.

The Plaintiffs argue that Reinhart should have stopped the hiring of Wilson after representatives of IBEW Local 193 notified him that Wilson was not qualified for the Position because he was not a journeyman electrician. The Court disagrees. Reinhart referred the matter to the Department's General Counsel Huntley. Huntley reviewed the matter and advised him that the Department followed proper procedures. The Plaintiffs criticize Huntley's review of the matter, but the fact remains that Reinhart proceeded with the hire only after the Department's General

Counsel reviewed the matter and advised him that the Department followed the proper procedures. There is no evidence that Reinhart acted improperly in completing the hire.

The Plaintiffs argue that all of the evidence must be looked at together. They argue that, taken as a whole, the evidence shows that the Governor's Office was running a patronage scheme in which the name of the candidate recommended by the Governor was forwarded to the agency, the agency then conducted the normal, non-political hiring process for a <u>Rutan</u>-covered position, and the Governor's Office only approved the hire if the recommended candidate was selected for the position. The linchpin of this theory is Laura Norton. Others testified that the Governor's Office notified applicants of <u>Rutan</u>-covered openings, or sent resumes to agencies, but Norton is the only person who testified that the Governor's Office used the ePAR system to block hires if the agency did not pick the Governor's candidate through the <u>Rutan</u>-covered hiring process. Norton, however, also testified that the Governor's Office stopped the practice of using the ePAR system to block hires while she was at the Department. Norton left the Department in 2006, before the hiring process for the Position took place in 2007. Her testimony, therefore, may support the inference that the

Governor's Office injected political favoritism into the Rutan-covered hiring process in 2003 and 2004, but not in 2007 when the Department filled the Position. The Plaintiffs fail to make out a prima facie case.

THEREFORE, Defendants' Motion for Summary Judgment (d/e 42) is ALLOWED. Judgement is entered in favor of Defendants James Reinhart, individually and in his official capacity, and Michael Randle, in his official capacity as Director of the Illinois Department of Corrections, and against Plaintiffs Chad Fitzpatrick, Jeffrey Huffer, William Fish, Jr., Michael Felix, Jason Veech, Rodney Schleder, James Woodrum, Troy Newhouse, and Eric Skaggs. All pending motions are denied as moot. This case is closed.

ENTERED this 10th day of November, 2010

s/ Michael P. McCuskey
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE